# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

AARON L. JACOBS, JR.,

       Plaintiff,

    v.                               Case No. 15-CV-167

LT. J. RHODE, et al.,

       Defendants.

# ORDER

The *pro se* plaintiff, Aaron L. Jacobs, Jr., is confined at the Brown County Jail. He filed this lawsuit under 42 U.S.C. § 1983 and was granted leave to proceed *in forma pauperis* on claims regarding the conditions of his confinement, deliberate indifference to his mental health needs, and deliberate indifference to a serious medical need. Defendants Anderson, Baciak, Bowden, Cieslewicz, Dimmer, Johnson, Kershek, Klarkowski, Langan, Leyendecker, Nies, Rhode, Sickle, Timreck, Trinkner, and Wolter (the "Brown County defendants") have filed a motion for summary judgment. (ECF No. 43.) Defendants Foster and Hutzler (the "Medical defendants") also have filed a motion for summary judgment. (ECF No. 49.) Jacobs has filed a cross-motion for summary judgment. (ECF No. 59.)

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under a federal statute. The case was assigned to this court according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72 (E.D. Wis.). The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.). The summary judgment motions have been fully briefed and are ready for resolution.

## BACKGROUND

Jacobs is a frequent inmate of the Brown County Jail, apparently always as a pretrial detainee. (ECF No. 58, ¶ 1.) In his complaint, Jacobs recounts roughly 50 separate periods of incarceration in the jail dating back to December of 2002. Aside from a roughly a two-and-a-half year period preceding October 2005, there has scarcely been a month that Jacobs did not spend at least some time in the Brown County Jail. (ECF No. 1-1 at 7-8.) Some of the terms were just a few days; occasionally they spanned months. (*Id.*) In his time at the jail, Jacobs received dozens of sanctions for misconduct. (ECF No. 58, ¶ 2.) These sanctions resulted in Jacobs's placement in punitive segregation and loss of access to out-of-cell recreation. (*Id.* ¶ 3.)

When an inmate who is subject to punitive segregation or loss of recreation status is released from the Brown County Jail, the inmate's slate is not wiped clean. Rather, the jail's policy provides that any unserved disciplinary sentence will "carry-over" to be imposed should the inmate re-enter the jail. (*Id.*) Thus, if an inmate receives

2

a sanction of ten days in segregation but is released from the jail before the ten days are up, should he again return to the jail he will be automatically placed back in segregation until the full disciplinary sentence has been served. The combined effect of this policy and Jacobs incurring so many sanctions is that, at least recently, he has spent all of his time at the jail in punitive segregation without any recreation. Moreover, as of April 30, 2014, Jacobs had accrued approximately 760 days of punitive segregation sanctions and 635 days of loss of recreation sanctions remaining to be served. (ECF No. 45 ¶ 18.) As of the date Jacobs filed his complaint in this action, February 11, 2015, he had twenty-nine months of segregation to serve. (ECF 1-1 ¶ 3.)

Jacobs alleges that segregation with no opportunity for exercise exacerbated his pre-existing mental health problems, leading to self-harming behaviors and further acting out, which resulted in additional disciplinary sanctions. He contends that the jail's policy of carrying over un-served disciplinary time is unconstitutional. He further alleges that the Brown County defendants and the Medical defendants were deliberately indifferent to his medical and mental health needs in that they denied him effective medical treatment, including adequate mental health treatment, after he physically harmed himself.

Based on the complaint's allegations, the court determined that Jacobs could proceed on his deliberate indifference claims regarding five instances when he harmed himself  as well as the defendants' alleged indifference and failure to adequately treat

his injuries. (ECF No. 12 at 6.) He was also allowed to proceed on a claim regarding the conditions of his confinement. (*Id.*) The court determined that Jacobs's allegations that he was placed in segregation and not permitted out-of-cell recreation for at least one year implicated the Constitution. Jacobs is also proceeding on a deliberate indifference claim regarding his mental health issues and their alleged exacerbation based on the conditions. (*Id.* at 7.) Lastly, the court stated that it would treat Jacobs's claims against the defendants in their official capacities as a claim against Brown County. (*Id.* at 7-8.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

A party asserting that a fact is genuinely disputed, or not disputed, must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the

motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

**Medical Defendants**

Defendant Nurse Hutzler was a licensed registered nurse in the State of Wisconsin in August of 2011. (ECF No. 51, ¶ 8.) Defendant Nurse Foster was a licensed practical nurse in the State of Wisconsin in March of 2011. (*Id.*, ¶ 9.) Throughout 2011 Nurses Foster and Hutzler were employed by Correctional Healthcare Companies to provide healthcare services to the inmates at the Brown County Jail. (*Id.*, ¶ 10.)

When inmates entered the jail they were informed that if they required non-emergency medical attention they had to submit a written medical slip to the Health Services Unit. (*Id.*, ¶ 12.) Health Services Unit nursing staff members triaged all medical slips received on a daily basis. (*Id.*, ¶ 13.) If an inmate was undergoing a medical emergency, all personnel had the authority to contact 911 and provide any necessary emergency treatment. (*Id.*) Health Services Unit staff see inmates during sick call, at which time they can determine if the inmate should be examined by a doctor in person.

(*Id.*, ¶ 14.) A doctor is also available for consultation by telephone 24 hours a day, 7 days a week. (*Id.*)

In his complaint Jacobs refers to five incidents when he harmed himself, four of which occurred in 2011. On March 11, 2011, he harmed himself by repeatedly banging his head against his cell window. (ECF No. 1-1 at 11-12.) On August 13, 28, and September 26, 2011, he cut his wrist with a sharpened staple. A couple of years later, on November 24, 2013, he again cut his wrist with a staple.

Jacobs's claim against the medical defendants relates to two of those incidents. (ECF No. 51, ¶ 5.) He alleges that Nurse Foster refused to provide him with medical treatment on March 11, 2011, after he banged his head on his cell door. Jacobs did not submit a request for medical treatment regarding the head injury he allegedly self-inflicted in March 2011. (*Id.* ¶ 16.) However, he did file a grievance relating to the incident, according to which he stated that officers told him that they contacted Nurse Foster and that she said she would come to assess him, but she never did. (ECF No. 60-4 at 2.) Nurse Foster has no recollection of being notified that Jacobs had suffered a head injury. (ECF No. 51 ¶ 15.)

Although Jacobs claims that Nurse Foster "intentionally refused to treat Plaintiff's wounds," he has not established that she knew he needed to be treated. Just because "officers" told Jacobs that they contacted her does not mean that they did. Nurse Foster states that she "acted according to her training, education, experience, and

nursing judgment at all times during her assessments, care and treatment of Jacobs throughout his time at the jail" (ECF No. 51, ¶ 19), and that she "did not consciously disregard Jacobs's medical needs, nor did she mistreat him." (*Id.* ¶ 20.) Jacobs does not dispute either statement. In accordance with Fed. R. Civ. P. 56(e)(2), this fact is deemed admitted as true by Jacobs. As a result, the record does not support a finding that Foster was deliberately indifferent to Jacobs's medical needs on March 11, 2011. Therefore, she is entitled to summary judgment.

As for Nurse Hutzler, Jacobs asserts that she refused to treat him after he cut himself with a staple on August 13, 2011. However, Hutzler examined Jacobs on August 14, 2011. (ECF No. 51, ¶ 21.) She noted that Jacobs's left wrist had a small cut and that it appeared to be healing normally, with no signs of infection. (*Id.*, ¶ 22.) Jacobs's cut was a superficial injury and did not require treatment. (*Id.*, ¶ 23.) Although Jacobs did not complain of pain, he was prescribed 650 mg. of Tylenol twice daily for three days per protocol. (*Id.*, ¶ 24.) Jacobs never submitted a medical request for additional treatment of this injury, nor is there any evidence that he filed a complaint or grievance related to this injury. (*Id.*, ¶ 25.)

Setting aside the question of whether the physical injuries Jacobs sustained were objectively serious, no reasonable factfinder could conclude that Hutzler acted with deliberate indifference toward Jacobs. Deliberate indifference requires more than medical malpractice or even objective recklessness. *Petties v. Carter*, 2016 U.S. App.

LEXIS 15524, 8-9 (7th Cir. 2016) (en banc). Rather, the plaintiff must be able to prove that the "official *actually* knew of and disregarded a substantial risk of harm." *Id.* at 8 (citing *Farmer v. Brennan*, 511 U.S. 825, 844 (1994) (emphasis in original). There is no evidence that Jacobs's injuries were such that a finder of fact could infer that Hutzler knew of and disregarded a substantial risk of harm. Nor is there any indication that any absence or delay in treatment resulted in Jacobs enduring additional pain or needing additional treatment that would have been otherwise unnecessary.

Accordingly, the court will grant the Medical defendants' motion for summary judgment.

**Brown County Defendants**

### Deliberate Indifference – Mental Health and Medical Care

The parties agree that Jacobs's claims arise under the Fourteenth Amendment's due process clause because at all times relevant he was a pretrial detainee. *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (citing *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012)). As a pretrial detainee, Jacobs was "entitled to at least the same protection against deliberate indifference to his basic needs as is available to convicted prisoners under the Eighth Amendment." *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003). Prison officials violate the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). The Supreme Court has not yet determined how much additional

protection the Fourteenth Amendment might give a pretrial detainee. *Rice v. Corr. Med. Servs. (In re Estate of Rice)*, 675 F.3d 650, 664 (7th Cir. 2012). Thus, the court applies the same legal standards to deliberate indifference claims brought under either the Eighth Amendment. *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). To prevail on his claim, Jacobs has the burden of showing that (1) the harm to him was objectively serious; and (2) that the official was deliberately indifferent to his health or safety. *Cavalieri*, 321 F.3d at 620 (citing *Farmer*, 511 U.S. at 833).

The Brown County defendants do not appear to dispute that the harm Jacobs faced was objectively serious. Aside from the deleterious psychological impact, Jacobs engaged in repeated physical self-harming behaviors. But they do dispute that they were deliberately indifferent to his mental health and medical needs. They attempt to show that they adequately addressed his serious medical needs with the following proposed findings of fact:

> 29. However, his medical chart reflects multiple occasions in 2013 where he received medical treatment for psychological problems. (Malcomson Aff. ¶ 32, Ex. A; see Jacobs' medical charts).

> 30. He had multiple mental health consultations with Dr. Okuleye and was placed on suicide watch on several occasions. (Malcomson Aff. ¶ 33, Ex. A; see Jacobs' medical charts).

> 31. Plaintiff's Brown County Jail file is replete with medical records and notes evidencing multiple psychological visits with Correctional Healthcare Companies. (Malcomson Aff. ¶ 34, Ex.'s A).

> 32. Plaintiff received regular medical and mental health treatment. (Malcomson Aff. ¶ 35, Ex. A; see Jacobs' medical charts).

…

34. In addition to the psychological treatment plaintiff received from Psychological Services Unit staff members, he received multiple tele-psychiatry appointments with Babatunde Okuleye, MD.

(ECF No. 45.)

In support of their proposed findings of fact, the Brown County defendants submit only one affidavit (technically, it is a declaration), from Captain Larry Malcomson. (ECF No. 47.) Malcomson identifies himself as the Brown County Jail Administrator. His affidavit authenticates four exhibits: Jacobs's Brown County Jail file (613 pages long) and three different jail policies. Beyond that, Malcomson's affidavit purports to recount details of Jacobs's time at the Brown County Jail. However, he does not allege that the facts are based upon his personal knowledge as required by Fed. R. Civ. P. 56(c)(4). As a result, the court cannot accept his affidavit for any purpose beyond its authentication of the appended exhibits.

However, the authentication of the exhibits is of little value to the court absent findings of fact referring to specific portions of those exhibits. The proposed findings of fact submitted by the Brown County defendants do not do that. Instead, they refer only to Malcomson's affidavit and "Ex. A" (Jacobs's 613 page jail file) generally. For example, Malcomson says that Jacobs "had multiple mental health consultations with Dr. Okuleye." (ECF No. 47, ¶ 33.) But he does not identify upon what documents he is relying when he makes that statement. The proposed findings of fact are no help,

referencing only "Ex. A, see Jacobs' medical charts," which apparently are included among the 613 pages of Jacobs's Brown County Jail file. But it is not the court's responsibility to scour exhibits in an attempt to search out facts that might support a movant's position. *See Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001).

But scour the court did, in an attempt to identify what support there was for various of the Brown County defendants' proposed findings of fact. With regard to the finding above that Jacobs had "multiple" mental health consultations with Dr. Okuleye, the court has identified only two instances, a month apart, where Jacobs apparently engaged in tele-psychiatry with Dr. Okuleye. (ECF Nos. 47-11 at 28 (Dec. 27, 2013); 47-11 at 24 (Jan. 28, 2014); *see also* ECF Nos. 47-10 at 48 (Dec. 27. 2013); 47-10 at 44 (Jan. 28, 2014)). While two consultations is perhaps literally "multiple," it is certainly not the picture one gets when reading the Brown County defendants' proposed findings of fact and Malcomson's affidavit.

Moreover, there is reason to doubt the accuracy of the Brown County defendants' proposed findings of fact and Malcomson's affidavit upon which they depend. Malcomson makes various statements that do not appear to be correct and which are repeated in the Brown County defendants' proposed findings of fact. For example, he states that "the March 11, 2011 incident referenced in Jacobs' complaint is not reflected in Jacobs' Brown County jail file[.]" (ECF No. 47, ¶ 24.) Similarly, Malcomson states that "the September 26, 2011 incident referenced in Jacobs' complaint

is not reflected in his Brown County Jail file." (ECF No. 47, ¶ 28.) And he states that Jacobs's Brown County Jail file does not reflect the November 24, 2013 incident. (ECF No. 47, ¶ 31.) The implication of these statements, of course, is that these incidents never happened and that Jacobs is making them up.

But Jacobs attached to his declaration several jail documents evidencing his complaint regarding the March 11, 2011 incident (ECF No. 60-4 at 2-7), the September 26, 2011 incident (ECF No. 60-4 at 34-38), and the November 24, 2013 incident (ECF No. 60-4 at 39-53). Confronted with these documents, the Brown County defendants had to shift their position, from one denying that the incidents ever occurred to one defending their response to the incidents. (ECF No. 75 at 12-14.) At a minimum this creates doubt as to the completeness and accuracy of what Malcomson calls Jacobs's Brown County Jail file.

Turning to the five incidents where Jacobs allegedly harmed himself as a result of the jail conditions and their effect on his mental illness, Jacobs alleges that the defendants failed to stop him from harming himself and/or failed to provide him with treatment after he injured himself.

In their proposed findings of fact in support of their motion for summary judgment, the Brown County defendants substantively address only the August 28, 2011, incident. They note that the jail's file indicates that on August 29 Jacobs twice refused treatment and received treatment only after he was forcibly removed from his

cell. (ECF No. 58, ¶¶ 22-24.) Although Jacobs did receive medical treatment following his injuries, Jacobs alleges that Bowden told him to "go ahead" when Jacobs said he was going to kill himself. (ECF No. 60-4 at 17.) When Jacobs proceeded to cut his wrists, defendant Bowden did nothing. (ECF No. 60-4 at 17-18.) The jail's file also indicates that defendants Anderson, Cieslewicz, Leyendecker, and Rhode refused to help Jacobs while he was cutting himself. A reasonable finder of fact could conclude that the defendants' conduct amounted to deliberate indifference to a serious medical need. Therefore, the Brown County defendants' motion for summary judgment is denied as to this incident.

As for the remaining four incidents (March 11, 2011, ECF No. 60-4 at 2; August 13, 2011, ECF No. 60-4 at 9; September 26, 2011, ECF No. 60-4 at 34-37; November 24, 2013, ECF No. 60-4 at 40), as discussed above the defendants allege that Jacobs's jail file contains no reference to any of these incidents. (ECF No. 58, ¶¶ 21, 25, 28.) As a result, the Brown County defendants' proposed findings of fact establish nothing more than that the jail's file is incomplete. As part of his own motion for summary judgment, Jacobs provides jail records relating to each incident. (ECF No. 60-4.) It was only in response to Jacobs's motion for summary judgment that the Brown County defendants argued that the facts contained in the records do not support a claim of deliberate indifference. While the jail records produced by Jacobs preclude summary judgment on behalf of the Brown County defendants, they do not establish that Jacobs is entitled to

summary judgment, either. Based on the court's review of the records, it concludes that reasonable finders of fact may disagree as to whether the Brown County defendants' conduct amounted to deliberate indifference.

In sum, factual issues remain as to whether the Brown County defendants were deliberately indifferent to Jacobs's mental health care needs. Consequently, the court must deny the Brown County defendants and Jacobs's motions for summary judgment as to this claim. The court must also deny the parties' motions for summary judgment as to Jacobs's medical care claims based on the five self-harm incidents.

**Conditions of Confinement**

The parties agree that Jacobs's conditions of confinement claim arises under the Fourteenth Amendment's due process clause because at all times relevant he was a pretrial detainee. *Budd*, 711 F.3d at 842 (citing *Rice.*, 675 F.3d at 664). However, courts look to Eighth Amendment case law as a guide in evaluating conditions of confinement claims brought by pretrial detainees. *Id.* The alleged conditions must be objectively serious enough to amount to a constitutional deprivation, and the defendant prison official must possess a sufficiently culpable state of mind. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) (citations omitted).

The Constitution requires a jail to provide only "the minimal civilized measure of life's necessities." *Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014) (quoting *Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006)). These necessities include "shelter, heat,

hygiene items and clothing." *Id.* (citing *Gillis*, 468 F.3d at 491). *See, e.g., Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995) (reversing dismissal of complaint alleging that plaintiff spent a week and a half in a cell without adequate heat, clothing, or bedding); *Vinning-El v. Long*, 482 F.3d 923, 924-25 (7th Cir. 2007) (reversing summary judgment for defendant prison guards where prisoner was held for six days without sanitation items in cell contaminated with human waste and in which sink and toilet did not work).

According to Jacobs, inmates in segregation at the jail do not receive family visits, family phone calls, bed sheets, clocks, toothbrush, dental floss, shampoo, canteen or commissary, razors and nail clippers, indigent haircuts, natural sunlight, photographs, newspapers, magazines, wash cloths, mop, television, and radio. While punitive segregation undoubtedly results in a loss of much that is otherwise available to prisoners in the general population (after all, it is punitive), from a constitutional perspective, what matters is not so much what is taken away but what remains.

The Brown County defendants emphasize that under the jail's policy inmates in segregation will have access to food, religious practices unless the practice impinges on the safety or security of the jail, courts and other professionals such as attorneys, and basic sanitary and hygiene requirements, "such as soap, toothpaste and toothbrush, and access to minimal amounts of exercise." (ECF No. 58, ¶ 33.) But the existence of a policy does not establish that, as a factual matter, Jacobs actually received these necessities. A

15

policy can be violated.[1] In their proposed findings of fact, other than citing to the jail's policy, the Brown County defendants do not establish that Jacobs was actually afforded the necessities required by the policy. Nor does Jacobs specifically state that he was denied shelter, heat, hygiene items, or clothing. Therefore, the court cannot grant summary judgment to either party as to this aspect of Jacobs's conditions of confinement claim.

On the other hand, it appears undisputed that while in segregation, inconsistent with the jail's policy, Jacobs was not afforded access to minimal amounts of exercise. Instead, he was subjected to 24-hour lockdown in his cell. Under certain circumstances, a denial of exercise might be appropriate or even unavoidable. In *Pearson v. Ramos*, 237 F.3d 881 (7th Cir. 2001), the court of appeals reversed a judgment of $30,000 in favor of the prison inmate who was denied outdoor recreation for a year. The prison had imposed this disciplinary sanction in the form of four 90-day sanctions for serious misconduct, the sentences to be served consecutively. The inmate's infractions were undoubtedly serious:

> In the first one, the plaintiff and another inmate attacked and beat a guard, injuring him seriously enough to require his hospitalization. In the

---

[1] Or a policy might conflict with a law. The jail's policy states that an inmate who commits a "major violation" may be placed in segregation for up to 25 days for the first offense, 30 days for the second, and 35 days for the third. (ECF No. 47-13 at 3.) Under state law, "[f]or violating the rules of the jail, an inmate may be kept in solitary confinement, under the care and advice of a physician, but not over 10 days." Wis. Stat. § 302.40. Apparently no court has yet decided how this limitation might apply in the context of multiple violations. *Tatum v. Clarke*, 2015 U.S. Dist. LEXIS 143830, 15-16 (E.D. Wis. Oct. 22, 2015). Nor is the question before the court as to whether the Brown County Jail's segregation constitutes "solitary confinement" as that term is used in the statute. Moreover, the parties have not raised this matter in their briefs. Therefore, the court finds it inappropriate to address this point further.

second, the plaintiff set fire to blankets, coats, and cardboard boxes, producing so much smoke that prisoners with respiratory problems had to be evacuated. Next, the plaintiff spat in the face of a guard who was trying to restrain him after the plaintiff had assaulted another guard. Last, he threw a broom and a bottle of unspecified "bodily fluids" at a medical technician, and the fluids got on the victim's face.

*Id.* at 885. Under these circumstances, the court concluded that the mere fact that a series of infractions led to a lengthy period during which the inmate was denied recreation did not amount to a constitutional violation. Otherwise, a prisoner could generate a constitutional claim simply by re-offending.  *Id.* at 886.

The Brown County defendants place much weight upon *Pearson*. However, the inmate in *Pearson* was not a pretrial detainee; he had been convicted of a crime. Perhaps more importantly, significant in the court's conclusion in *Pearson* was the fact that there was no evidence that the inmate suffered any physical or psychological harm as a result of the deprivation of recreation, much less that the defendants were aware of it. *Pearson*, 237 F.3d at 886-87. Jacobs contends that he did suffer such harm as a result of his deprivation of recreation when coupled with the segregation.

 "[L]ack of exercise can rise to a constitutional violation '[w]here movement is denied and muscles are allowed to atrophy[] [and] the health of the individual is threatened.'" *Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015) (quoting *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985); citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) ("Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is

17

threatened."); *Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997)). "[S]egregation is akin to solitary confinement and … such confinement, uninterrupted by opportunities for out-of-cell exercise 'could reasonably be described as cruel and, by reference to the current norms of American prisons, unusual.'" *Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001) (quoting *Pearson v. Ramos*, 237 F.3d 881, 884 (7th Cir. 2001)).

The records provided to the court start in 2011. It appears that since then there have been three periods where Jacobs spent more than 100 consecutive days in custody: from June 16, 2011 until October 6, 2011 (112 days); from April 15, 2013 until August 21, 2013 (128 days); and from August 29, 2013 until April 30, 2014 (244 days). It appears that Jacobs spent the entirety of these spans in punitive segregation without recreation time, i.e., on 24-hour lockdown. On this record, the Brown County defendants have not established that Jacobs was afforded "minimal amounts of exercise" as required by the jail's policy.

As for whether these denials of exercise were injurious, the record supports a finding that Jacobs suffers from mental illnesses. (*See* ECF No. 60-6 at 9, 2015 DOC Psychological Evaluation.) He also engaged in self-harming behavior. It is not a reach to conclude that months-long spans in segregation with no out-of-cell recreation had a negative effect on Jacobs's mental health. *See Delaney*, 256 F.3d at 683 ("Given current norms, exercise is no longer considered an optional form of recreation, but is instead a necessary requirement for physical and mental well-being."). Indeed, after three of his

self-harm incidents, Jacobs filed grievances in which he cited "24 hour lockdown" as one of the reasons he was harming himself. (*See* ECF No. 60-4 at 9, 21, 35.)

A plaintiff alleging that he was subject to unconstitutional conditions of confinement must also be able to demonstrate that the defendants were aware that "he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Townsend*, 759 F.3d at 687 (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). The documents submitted by Jacobs contain multiple instances where he alleges that he notified the Brown County defendants that his prolonged 24-hour lockdown was causing him to harm himself and that they rebuffed his pleas for help. Whether the Brown County defendants took appropriate steps to abate the risks associated with 24-hour lockdown depends, in part, upon the medical and mental health care they afforded Jacobs. And, as discussed above, the Brown County defendants have not demonstrated that they took reasonable measures to abate the risk of serious harm.

The Brown County defendants contend that Jacobs must present expert evidence of causation between the lack of exercise and an exacerbation of his mental condition. *Cf. Pearson*, 237 F.3d at 886 (noting that inmate was not competent to testify on relation between exercise and dental problems); *Gruenberg v. Schneiter*, 474 Fed. Appx. 459, 463 (7th Cir. 2012) (affirming grant of summary judgment in favor of defendants where inmate presented no admissible evidence linking muscle pain and depression to

exercise deprivation). Self-represented indigent inmates are unlikely to have the resources needed to obtain an expert witness. While there certainly are many instances where the lack of expert evidence leads to the dismissal of an inmate's case, the court must be mindful of how confinement and indigence complicate litigation. Under certain circumstances, it might be appropriate to recruit an attorney to represent an indigent litigant or to appoint an expert under Fed. R. Evid. 706, *see Ledford v. Sullivan*, 105 F.3d 354, 361 (7th Cir. 1997).

Having concluded that Jacobs's claims do not fail for any other reason, the court concludes that the lack of expert evidence would be an inappropriate basis upon which to grant summary judgment at this point. Jacobs has requested that the court appoint an attorney to represent him. Given the facts and posture of this case, the court concludes that it is appropriate to now grant that request. *See Garner v. Sumnicht*, 554 Fed. Appx. 500, 501 (7th Cir. 2014) (district court should have recruited lawyer for inmate whose case depended on medical evidence that inmate was not capable of presenting) (citing *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) (en banc)); *see also Jackson v. Hepp*, 558 Fed. Appx. 689, 693 (7th Cir. 2014)). Should the court succeed in recruiting a volunteer attorney, the court will permit a period of limited discovery related to the question of whether the denial of exercise imperiled Jacobs's physical or mental health.

Finally, the Brown County defendants contend that they are entitled to qualified immunity. Qualified immunity "protects government officials from suit for damages

when their conduct does not violate clearly established statutory or constitutional rights." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Determining whether an official is entitled to qualified immunity involves two inquiries: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013). A right is clearly established if a "reasonable official would have understood what he is doing violates that right." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012) (internal quotations and brackets omitted). To prove that the official violated a clearly established right, a plaintiff must use Supreme Court precedent, circuit case law, or a consensus of out-of-circuit case decisions. *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011).

According to the defendants, Jacobs has failed to establish the deprivation of any constitutional right or that the rights allegedly violated were clearly established at the time of the violation. They note that the court in *Pearson* approved the stacking of sanctions and thus, at a minimum, it was not clearly established that the stacking of punitive sanctions was cruel and unusual punishment. (ECF No. 44 at 21, 27-29.)

However, this argument misses the point. As the court understands Jacobs's argument, his claim is two-fold. First, rather than challenging the jail's policy of "stacking" (requiring inmates subject to multiple disciplinary terms to serve those terms

21

consecutively), he is challenging the jail's policy of carrying over disciplinary sentences that have not been completed should they be re-admitted to the jail. Second, Jacobs contends that the jail's practice of depriving him of any out-of-cell recreation for lengthy stretches of time is unconstitutional.

*Pearson* did not address the first issue. As for the second, while the court in *Pearson* found no constitutional violation when the inmate was denied recreation for roughly a year, it so held only because Pearson had not established that the absence of exercise resulted in any physical or mental harm to him. Contrary to the defendants' assertions, it was clearly established during the relevant time period that the prolonged deprivation of out-of-cell recreation resulting in physical or psychological harm, where officials knew of the harm but failed to act on it, could violate the Constitution. *See French*, 777 F.2d at 1255; *Antonelli*, 81 F.3d at 1432; *Delaney*,256 F.3d at 684; *Thomas*, 130 F.3d at 764.

As explained above, Jacobs, a pretrial detainee, has been subjected to extended periods of time in punitive segregation with no out-of-cell recreation. These conditions could violate his constitutional rights, especially because it appears that he was subjected to them three times for over 100 days, and a reasonable finder of fact could conclude that his mental health allegedly deteriorated as a result. Moreover, there is a genuine dispute of material fact as to whether the defendants took reasonable steps to address the harm Jacobs allegedly suffered.

Accordingly, the defendants are not entitled to qualified immunity.

*Monell*

The Brown County defendants contend that they are entitled to summary judgment on Jacobs's official capacity claim against Brown County because Jacobs has not suffered a constitutional deprivation and has failed to identify any policy or custom of the municipal defendant. (Jacobs did not name Brown County as a defendant, but because he sued the Brown County defendants in their official capacities the court permitted him to proceed on a *Monell* claim without requiring him to file an amended complaint naming Brown County, *see Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008).) Brown County cannot be liable for the unconstitutional acts of its employees unless those acts were part of an official custom or policy. *King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *see also Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008)). To survive summary judgment, Jacobs "must present evidence demonstrating the existence of an official policy, widespread custom, or deliberate act of a county decision-maker of the municipality or department." *King*, 680 F.3d at 1020 (quoting *Grieveson*, 538 F.3d at 771). Jacobs must also show that the official policy or custom caused his constitutional deprivation. *Id.*

As discussed above, a reasonable factfinder could conclude that Jacobs suffered constitutional deprivations based on the conditions of confinement he was under at the jail, as well as the defendants' treatment (or alleged lack of treatment) of Jacobs's mental

Case 2:15-cv-00167-WED   Filed 09/09/16   Page 23 of 24   Document 79

health and medical needs. In addition, Jacobs has identified a jail policy that allegedly caused the constitutional deprivation(s). Jacobs alleges that the jail's policy requiring that his unserved disciplinary sentences "carry-over" when he is discharged and subsequently re-enters the jail has resulted in continuous punitive segregation and loss of out-of-cell recreation. Jacobs alleges that this constant segregation without any opportunity for recreation results in unconstitutional conditions of confinement, exacerbates his mental illnesses, and causes him to harm himself.

The Brown County defendants have not shown that they are entitled to summary judgment on Jacobs's *Monell* claim.

## ORDER

**IT IS THEREFORE ORDERED** that the Brown County defendants' motion for summary judgment (ECF No. 43) is **DENIED**.

**IT IS FURTHER ORDERED** that the Medical defendants' motion for summary judgment (ECF No. 49) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (ECF No. 59) is **DENIED**.

**IT IS FURTHER ORDERED** that the court will attempt to recruit a pro bono attorney to represent the plaintiff.

Dated at Milwaukee, Wisconsin this 9th day of September, 2016.

WILLIAM E. DUFFIN
U.S. Magistrate Judge